UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| SAND HILL ADVISORS, LLC, a Delaware limited liability company,<br><br>                Plaintiff,<br><br>  v.<br><br>SAND HILL ADVISORS LLC, a California limited liability company,<br><br>                Defendant.<br>_____/ | No. C 08-5016 SBA (MEJ<br><br>**REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR ATTORNEY'S FEES (DKT. #61)** |

## I. INTRODUCTION

Before the Court is Defendant Sand Hill Advisors, LLC's ("Defendant") Motion for Attorney's Fees, filed on February 9, 2010. (Dkt. #61.) On April 21, 2010, the undersigned found the matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). (Dkt. #83.) After consideration of the parties' papers, relevant legal authority, and good cause appearing, the undersigned RECOMMENDS as follows.

## II. BACKGROUND

Plaintiff Sand Hill Advisors, LLC ("Plaintiff"), a "wealth management" firm located in Menlo Park, California, adopted the name Sand Hill Advisors in 1999, when it was located at 3000 Sand Hill Road in Menlo Park. (*Order Granting Defendant's Motion for Summary Judgment* ("Order") 1:24-25, 2:13-17, Dkt. #57.) Plaintiff provides financial and advisory services to "high net-worth" clients, such as investment planning, retirement, and estate planning. *Id.* at 1:28-2:3. Plaintiff's founders selected the name "Sand Hill Advisors" not only because of the firm's location, but to capitalize on the association with the Silicon Valley area. *Id.* at 2:20-22. In 2000, Plaintiff changed its state of incorporation from California to Delaware in relation to an acquisition it made. *Id.* at 3:1-3. In November 2007, Plaintiff converted from a Delaware corporation to a limited

1 liability company, and sought to change its name from Sand Hill Advisors, Inc. to Sand Hill
2 Advisors, LLC. *Id.* at 3:3-8. Plaintiff was unable to register the new name with California's
3 Secretary of State because Defendant had previously registered the name with the Secretary of State
4 in 1999. *Id.* at 3:8-10.

5 Defendant is in the business of purchasing and selling commercial real estate and is located
6 in Los Altos, California. *Id.* at 3:12-24. Defendant selected its business name by combining the last
7 names of its founders, Sandell and Hill. *Id.* Defendant does not provide any public services and has
8 never provided any financial or investment advice. *Id.* at 3:25-26.

9 Following its inability to register the name "Sand Hill Advisors LLC" with the California
10 Secretary of State, and after attempting to informally resolve the situation, Plaintiff sued Defendant
11 for service mark infringement under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, in this district. (*Id.*
12 at 4:5-7; Pl.'s Opp'n 1:17-19, Dkt. #72.) On January 26, 2010, the Honorable Saundra B.
13 Armstrong, the presiding judge in the matter, granted summary judgment in favor of Defendant,
14 finding that Plaintiff was unable to prove that it had a protectable service mark or that Defendant's
15 use of the identical mark was likely to cause consumer confusion. (Order 14:12-15, 20:4-10, Dkt.
16 #57.)

17 On February 9, 2010, Defendant filed the instant motion seeking $378,779.00 in attorney's
18 fees. (Dkt. #61.) On March 18, 2010, Plaintiff Sand Hill Advisors LLC ("Plaintiff") filed an
19 opposition (Dkt. #72), and Defendant filed a reply on March 25, 2010 (Dkt. #77).

20 **III. DISCUSSION**

21 In its Motion, Defendant argues that Plaintiff's lawsuit for willful infringement merits an
22 award of reasonable attorney's fees because Plaintiff pursued its claim in bad faith and for an
23 improper purpose, and because Plaintiff knew prior to filing suit that its claim was groundless and
24 unreasonable. (Def.'s Mot. 6:3-7, Dkt. #61.) Specifically, Defendant contends that Plaintiff filed
25 this case to force Defendant to surrender its business registration with the Secretary of State so that
26 Plaintiff could register its name. *Id.* at 6:21-24. Defendant argues that its victory on summary
27 judgment proves that Plaintiff produced no evidence to support its claim, and that this entitles it to
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

an award of fees. *Id.* at 17:4-6.

In response, Plaintiff asserts that it filed suit based upon a genuine belief that it had superior rights to the service mark and that Defendant's use of the mark could be enjoined. (Pl.'s Opp'n 10:8-10, Dkt. #72.) Plaintiff states that its desire to register in its home state under a mark it had used continuously for fourteen years and had spent a great deal of time and resources developing is not evidence of an improper motive. *Id.* at 10:10-14. Plaintiff argues that summary judgment against it does not change this fact. *Id.*

**A.     Legal Standard**

The Lanham Act provides that "exceptional cases" may merit an award of reasonable attorney's fees. 15 U.S.C. § 1117(a). The statute provides that a court may award fees; it does not require them. *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000). "When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorney's fees to the defendant." *Boney, Inc. v. Boney Services, Inc.*, 127 F.3d 821, 827 (9th Cir. 1997). However, the exceptional case requirement must be construed narrowly. *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008) (citing *Gracie*, 217 F.3d at 1071). Thus, where the plaintiff's claims of infringement raise debatable issues of law and fact, it is not an exceptional case for purposes of attorney's fees. *Boney, Inc.*, 127 F.3d at 827.

An infringement case under the Lanham Act is brought in bad faith where it is "initiated for reasons other than a sincere belief in the merits of the underlying claims." *Universal City Studios, Inc. v. Nintendo Co.*, 615 F. Supp. 838, 864 (S.D.N.Y 1985) (*aff'd*, 797 F.2d 70 (2nd Cir. 1986)); *see also K-Jack Engineering Co. v. Pete's Newsrack, Inc.*, 1980 U.S. Dist. LEXIS 16677, at *4 (C.D. Cal. 1980) (finding an exceptional case where the plaintiff's infringement action lacked "any basis of admissible evidence for a good faith belief that such infringement was occurring[.]").

A suit is groundless and unreasonable where it has no legal basis. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002) (district court did not err in finding plaintiff's dilution of trademark claim to be groundless and unreasonable because it had no legal basis and was based on the "absurd and just short of frivolous contention that the mark 'Diana, Princess of Wales'" had

3

1  secondary meaning because the public now identified the mark with "charitable and humanitarian
2  services rather than Princess Diana the individual."); *compare Applied Information Sciences Corp. v.*
3  *eBAY, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007) (finding no abuse of discretion where district court
4  denied the defendant's motion for attorney's on a finding that the plaintiff did not pursue litigation
5  for purposes of harassment and that the case raised debatable issues.)

**B.   Application to the Case at Bar**

In its Motion, Defendant argues that this case is exceptional because Plaintiff sued it solely to force Defendant to surrender its business registration with the Secretary of State so that Plaintiff could register its name.[1] (Def.'s Mot. 6:21-24, Dkt. #61.) Defendant asserts that Plaintiff tried to conceal this purpose by claiming that its use of "Sand Hill Advisors LLC" was likely to cause customer confusion, but argues that this claim failed by Plaintiff's own admission. *Id.* at 7:3-5. Specifically, Defendant claims that when one of its founders, Albert Hill, spoke in person with James McCaffrey, former president and COO of Plaintiff, Mr. McCaffrey admitted that he did not think the Defendant's use of the name in dispute was likely to cause consumer confusion.[2] (Hill Decl. ¶ 11, Dkt. #38.) Additionally, Defendant claims that Plaintiff sued knowing "that it had no reasonable or evidentiary basis for claiming that 'Sand Hill Advisors' was a protectable mark." (Def.'s Mot. 10:23-25, Dkt. #61.)

Further, Defendant points out that both the United States Patent and Trademark Office and Judge Armstrong found that Plaintiff did not have a protectable service mark. (Order 4:8-13, 14:12-15, Dkt. #57.) Defendant argues that the Court's grant of summary judgment was a "sweeping

---

[1] Defendant argues that Judge Armstrong expressly found as such when she wrote: "[a]s a result of Plaintiff's inability to register the name "Sand Hill Advisors LLC" with the California Secretary of State, Plaintiff filed suit against Defendant in this Court. . . ." (Order 4:4-6, Dkt. #57.) The undersigned does not agree with Defendant's reading of that section of Judge Armstrong's procedural history, and declines to find that the sentence translates to a finding that Plaintiff filed for an improper purpose.

[2] In response, Plaintiff contends that the parties did not discuss the merits of the service mark claim, and Mr. McCaffrey "believes it is very unlikely he would have said something to Mr. Hill that he did not believe." (Pl.'s Opp'n 12:3-5, Dkt. #72.)

4

1  defeat" which "underscores that [Plaintiff] did not and never could provide a shred of evidence to
2  support its claim." (Def.'s Mot. 17:4-6, Dkt. #61.)
3       In response, Plaintiff asserts that Defendant has failed to meet its burden of proving that the
4  action was groundless, unreasonable, vexatious, or pursued in bad faith, and thus its fee motion must
5  be denied. (Pl.'s Opp'n 1:7-9, Dkt. #72.) Plaintiff contends that it filed suit based upon a genuine
6  belief that it had superior rights to the service mark and that Defendant's use of the mark could be
7  enjoined. *Id.* at 10:8-10. Plaintiff argues that, as the senior user of a mark identical to Defendant's
8  which both used in the same geographic region, it was entirely reasonable for it to seek legal redress
9  rather than risk forfeiting its rights to the mark. *Id.* at 2:2-4. Plaintiff further argues that, although it
10 lost on summary judgment, its claim was not groundless, as it believed that Defendant's use of an
11 identical service mark when both parties offer real estate-related services created a likelihood of
12 confusion. *Id.* at 2:10-15. Plaintiff claims that it was concerned and continues to be concerned that
13 a current or potential customer seeing Defendant's name attached to an offer of real estate for lease
14 could become confused that Plaintiff was offering the space for lease. *Id.* at 7:8-21.
15      Plaintiff further argues that its evidence, including that the parties used identical marks and
16 provided related services in the same geographic area, raised debatable issues as to whether there
17 was a likelihood of consumer confusion. *Id.* at 22:8-11. Plaintiff maintains that there have been
18 instances of actual confusion, including its receipt of faxes and emails meant for Defendant. *Id.* at n.
19 18. Finally, Plaintiff states that its continued concern prompted it to change its name to "Sand Hill
20 Global Advisors, LLC" following receipt of Judge Armstrong's summary judgment Order. *Id.* at
21 7:21-22.
22      Upon review of the parties' arguments, the undersigned finds that this case is not an
23 exceptional one and that Defendant is not entitled to an award of fees. Plaintiff's case raised
24 debatable issues of law and fact, as evidenced by the fact that Judge Armstrong spent nearly twenty
25 pages analyzing the parties' arguments before finding that Defendant was entitled to summary
26 judgment in its favor. (Dkt. #57.) Thus, Plaintiff's case was neither groundless nor unreasonable,
27 and, as detailed below, the undersigned finds that it was not pursued in bad faith. The undersigned
28

1  shall consider each of the parties' arguments in turn.

2    1. <u>Whether Plaintiff's Lawsuit was Filed in Bad Faith</u>

3    Defendant argues that Plaintiff's improper motive in bringing this case was to register the

4  name "Sand Hill Advisors LLC" with the Secretary of State, which it could not do because

5  Defendant had already registered under that name. (Def.'s Mot. 1:8-10, Dkt. #61.)  In support of

6  this argument, Defendant argues that Plaintiff knew, prior to filing suit, that it did not have a

7  protectable service mark. *Id.* at 2:4-6. Defendant focuses on certain deposition testimony given by

8  current and former executives of Plaintiff to support its arguments that Plaintiff's purpose for filing

9  suit was not a proper one under the Lanham Act, and that Plaintiff knew in 1995 that its mark was

10 not protectable.

11    *a.* *Whether Plaintiff Had an Improper Motive*

12   Defendant cites from the testimony of James McCaffrey to support its argument that Plaintiff

13 had an improper motive:

> Q: Wasn't it true, though, you filed this lawsuit because you want the Sand Hill Advisors, LLC, business name? A: Yes.  Q: That is the reason why you filed this suit; isn't it?  A:  We believe there is enough there for us to get the name because we believe in that.  Q: Why do you think you are entitled to the business name? A: We believe we have had senior use of it since 1995.  Q: Why do you think that entitles you to the business name? A: Because we have put tremendous resources and effort into building up the goodwill and cache and we are entitled to that business name and have been using it since 1995.

19 (Davidson Decl. ¶ 18, Ex. E, RT 212:7-213:24, Dkt. #62-5.)

20   However, the undersigned finds that while the driving force behind Plaintiff's filing of the

21 lawsuit may very well have been the desire to register to do business under the Sand Hill Advisors

22 mark, it does not make the filing of the case unreasonable or in bad faith.  In fact, Mr. McCaffrey

23 testified in addition to the testimony above that Plaintiff did not consider registering with the

24 Secretary of State under a different name because Plaintiff "built a lot of goodwill under that name."

25 (Davidson Decl., Ex. E, RT 128:13-129:5, Dkt. #62-5.)

26   Additionally, another co-founder and the current CEO of Plaintiff, Jane Williams, submitted

27 a declaration stating that she believed that Plaintiff's marketing and promotional efforts had caused

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1 Plaintiff and the mark "Sand Hill Advisors" to gain tremendous respect in the community, that
2 Defendant's use of the identical mark could cause confusion and damage to Plaintiff, and that she
3 did not believe there was anything improper about suing for service mark infringement in attempts
4 to prevent Defendant from using an identical mark.  (Williams Decl. ¶¶ 1, 4, 5, Dkt. #74.)  Ms.
5 Williams states that, based on this concern regarding confusion, Plaintiff changed its name to "Sand
6 Hill Global Advisors LLC."  *Id.* at ¶ 6.  Thus, the undersigned finds that Plaintiff's genuine and
7 continued concern regarding confusion, especially as evidenced by its willingness to change its
8 name after failing to prevail on its service mark infringement claim, establishes a good faith belief in
9 its claim.  Further, in her order, Judge Armstrong gave no indication that the claim was baseless or
10 frivolous.  Accordingly, the undersigned finds that Plaintiff's motive in bringing suit was not
11 improper.

       *b.*  *Whether Plaintiff Had Knowledge that its Mark was not Protectable*

13     Defendant next cites to the deposition of Gary Conway to support its argument that Plaintiff
14 knew prior to filing suit that "Sand Hill Advisors" was not a protectable mark.  Mr. Conway, one of
15 Plaintiff's founders, testified that he likely solicited a trademark for the name Sand Hill Advisors in
16 1995 and definitely discussed trademarking with counsel.  (Davidson Decl., Ex. C, RT 84:6-85:10,
17 Dkt. #62-5.)  However, Mr. Conway did not state the result of that solicitation, but testified that
18 whatever did happen was the result of him accepting the advice of his counsel.  *Id.*  Defendant
19 contends that this testimony shows that Mr. Conway and Plaintiff knew in 1995 that the name Sand
20 Hill Advisors was not a protectable mark.  (Def.'s Mot. 11:4-5, Dkt. #61.)

21     In response, Plaintiff contends that Defendant misconstrues Mr. Conway's testimony.  (Pl.'s
22 Opp'n 13:10-12, Dkt. #72.)  Plaintiff argues that Defendant is seeking to draw an adverse inference
23 from Mr. Conway's invocation of the attorney-client privilege.  *Id.*  Plaintiff bases this on testimony
24 earlier in the deposition:

25   Q: When Sand Hill Advisors, Inc. in 1999 adopted the name Sand Hill Advisors, was
  there ever any thought about trademarking or service marking the name Sand Hill
26   Advisors?  A: I honestly can't remember what we discussed at the time, but we
  discussed what was necessary and acted upon the advice of counsel. . . .  Q: Did you
27   personally ever think that trademarking or service marking the name Sand Hill
  Advisors was something important to do?  A: I'm fairly certain that I went to our
28

1
2
>    attorney at the time and asked what was necessary.  Ms. Miller: Wait.  Objection.
>    Okay.  I need to object to the extent that you're going to talk about any
>    communications you had with any attorney at any time.

3 (Davidson Decl., Ex. C, RT 80:1-23, Dkt. #62-5.)  Following several additional objections, the

4 testimony cited by Defendant above took place.  Plaintiff contends that a fair reading of Mr.

5 Conway's testimony in its entirety shows that he could not remember whether he had spoken to

6 attorneys about registering the mark in question, but assumed that he had, and the fact that Plaintiff

7 did not apply for a service mark must have been on the advice of counsel.  (Pl.'s Opp'n 13:12-16,

8 Dkt. #72.  Plaintiff argues that there is no evidence that it believed it did not own a protectable mark,

9 and the fact that it did not apply for service mark registration in 1995 does not evidence that it knew

10 the mark was not protectable.  *Id.* at 13:1-3, 13:16-18.

11       The undersigned agrees with Plaintiff's reading of Mr. Conway's deposition.  Mr. Conway's

12 testimony indicates that he does not recall specifically the events and conversations of fifteen years

13 ago regarding Plaintiff's motivation for not applying for a service mark.  Even had he remembered

14 the advice of counsel specifically, Mr. Conway was instructed by his counsel not to discuss

15 communications he had with counsel.  Thus, the undersigned finds that this is not evidence that

16 Plaintiff knew it did not have a protectable service mark.  And, as discussed above, Ms. Williams

17 believed that Plaintiff's marketing and promotional efforts had caused Plaintiff and the mark "Sand

18 Hill Advisors" to gain tremendous respect in the community, (Williams Decl. ¶¶ 1, 4, 5, Dkt. #74),

19 and Mr. McCaffrey testified that he believed that Plaintiff had built a lot of goodwill under the Sand

20 Hill Advisors name (Davidson Decl., Ex. E, RT 128:13-129:5, Dkt. #62-5.)

21       Based on this analysis, the Court finds that Plaintiff did not have an improper motive in filing

22 suit; rather, it sought to protect a service mark it believed to be protectable.  Accordingly, the

23 undersigned finds that Plaintiff did not file suit in bad faith.

24
25
      2.     <u>Whether Plaintiff Raised Debatable Issues Regarding the Mark's Descriptiveness</u>

26       Defendant next argues that Plaintiff had "no reasonable or evidentiary basis to disclaim the

27 geographical significance" of the Sand Hill Advisors mark.  (Def.'s Mot. 11:22-23, Dkt. #61.)

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  Plaintiff, in response, argues that its infringement suit raised debatable issues as to whether the
2  service mark was suggestive rather than primarily descriptive. (Pl.'s Opp'n 17:13-20, Dkt. #72.)
3  Plaintiff argues here, as it did in its summary judgment opposition, that it reasonably believed that
4  the trier of fact could conclude that "Sand Hill" evoked qualitites associated with Silicon Valley, in
5  the same way that "Broadway" and "Rodeo" evoke thoughts of certain places. *Id.* at 18:20-23.
6  Plaintiff argues that the inclusion of a geographic term, such as the road on which the firm is
7  located, does not necessarily render the mark descriptive. *Id.* at 18:4-5. Plaintiff notes that it offered
8  evidence at the summary judgment phase that other service marks beginning with "Sand Hill" were
9  registered without proof of secondary meaning, indicating that they were not merely descriptive,
10 arguing that this created a debatable issue as to whether secondary meaning had been achieved. *Id.*
11 at 18:6-9, 20:6-7. Plaintiff also notes that although Judge Armstrong ultimately found that "Sand
12 Hill Advisors" was primarily geographically descriptive rather than suggestive, she did not find
13 Plaintiff's argument to the contrary to be frivolous. *Id.* at 17:13-15.
14       The amount of protection accorded to a mark is a function of the distinctiveness of that mark.
15 (Order 6:2-3, Dkt. #57.) "Marks are often classified in categories of generally increasing
16 distinctiveness; . . . they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5)
17 fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The latter three
18 categories are considered inherently distinctive and entitled to protection, while those marks
19 considered "descriptive" may only acquire distinctiveness through the mark's use in commerce. *Id.*
20 at 768-69. In her Order, Judge Armstrong noted that Plaintiff's evidence showed that it had selected
21 the name "Sand Hill" due to its geographical significance, but also entertained Plaintiff's arguments
22 that "Sand Hill Advisors" was a suggestive mark. (Order 7:15-10:20, Dkt. #57.) While Judge
23 Armstrong concluded that the mark was primarily geographically descriptive, the undersigned notes
24 that she spent nearly four pages weighing the parties' arguments on the issue. *Id.* Nowhere within
25 those pages did Judge Armstrong find Plaintiff's argument on this issue frivolous or vexatious, or
26 refer to it as unreasonable. In fact, Judge Armstrong agreed with Plaintiff in part, noting that "[t]he
27 mere fact that a mark references a geographic location does not ipso facto lead to the conclusion that
28

9

the mark is descriptive." (Order 7:15-16, Dkt. #57 (citing *Japan Telecom, Inc.*, 287 F.3d at 871.)) Thus, the undersigned finds that Plaintiff raised debatable issues as to whether the mark was primarily geographically descriptive.

       3.      <u>Whether Plaintiff's Argument that the Mark Acquired Secondary Meaning Was Unreasonable</u>

Defendant next argues that Plaintiff's claim that the mark was protectable based on acquired secondary meaning was groundless and unreasonable. (Def.'s Mot. 12:15-18, Dkt. #61.) Defendant contends that Plaintiff's only attempt to establish secondary meaning was its "factually barren" claim that it had engaged in advertising and promotion efforts in the wealth management industry over a period of time. *Id.* at 13:18-20. In response, Plaintiff argues its evidence of use and advertising of the mark over a substantial period of time created a debatable issue as to whether the "Sand Hill Advisors" mark had acquired secondary meaning. (Pl.'s Opp'n 20:6-12, Dkt. #72.)

The more distinctive a mark, the more protection it is afforded. *Two Pesos, Inc*, 505 U.S. at 768. A mark that is primarily geographically descriptive may only acquire distinctiveness through the mark's use in commerce. *Id.* at 768-69. The acquired distinctiveness is termed "secondary meaning." *Id.* at 769 (internal quotations omitted). "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999). "Evidence of use and advertising over a substantial period of time is enough to establish secondary meaning." *Clamp Manufacturing Co., Inc. v. Enco Manufacturing Co., Inc.*, 870 F.2d 512, 517 (9th Cir. 1989).

At the summary judgment phase, Plaintiff first relied on 15 U.S.C. § 1052(f)[3] to establish

---

[3] 15 U.S.C. § 1052(f) provides that a plaintiff who has exclusively and continuously used a mark in commerce for five years prior to the date that the claim of distinctiveness is made has made a prima facie case that the mark is distinctive.

10

secondary meaningowever, Judge Armstrong found that Plaintiff could not seek shelter using that section's presumption because it requires that the mark be registered. (Order 12:6-9, Dkt. #57.) Once again, rather than stopping at that conclusion, Judge Armstrong continued in her analysis for a full page to determine whether Plaintiff could have sought protection under § 1052(f), had it registered the mark. Although the Court found that "Plaintiff cannot demonstrate the requisite five years of substantially exclusive and continuous use" required to raise a presumption of secondary meaning, nowhere did Judge Armstrong refer to the arguments raised by Plaintiff as unreasonable or groundless. *Id.* at 13:3-6.

In response to Plaintiff's evidence regarding Plaintiff's advertising and promotion efforts, Judge Armstrong noted that the Court could only consider evidence of the mark in advertising prior to Defendant's use of the mark to determine whether the mark had acquired secondary meaning. *Id.* at 13:22-28; *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985). If the advertising is so effective as to create an association with the advertiser, then the plaintiff has established secondary meaning. *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) (internal citations omitted).

In her Declaration, Jane Williams attempted to illustrate how Plaintiff's advertising and promotion efforts have caused the "Sand Hill Advisors" mark to acquire secondary meaning. Ms. Williams stated that Plaintiff sponsors lecture series and events where Plaintiff's members speak about its role in the community. (Williams Decl. in Support of Pl.'s Opp'n to Def.'s Mot. for Summary Judgment ¶ 16, Dkt. #44.) Williams states that Plaintiff has a role as a school and educational sponsor, that Plaintiff's members have given seminars and speeches in the community where the firm is highlighted, that Plaintiff's founders have appeared on radio shows to provide commentary on market-related topics, that Plaintiff's members have contributed to local newspapers, and that members of Plaintiff have garnered various other media exposure. *Id.* at 16-20; Williams Decl. in Support of Pl.'s Opp'n to Def.'s Mot. for Summary Judgment, Exs. J-T, Dkt. #44. Judge Armstrong considered Plaintiff's marketing and promotion efforts, but found that Plaintiff adduced no evidence to show that its advertising and marketing efforts were effective.

(Order 14:11-12, Dkt. #57.)  Based on this, the Court found that Plaintiff failed to show secondary meaning, an essential element of its service mark infringement claim.  *Id.* at 14:12-14.

Although Judge Armstrong ruled against Plaintiff, the undersigned finds that Plaintiff did present evidence in an attempt to prove that the mark had acquired secondary meaning, and that this evidence helps establish that Plaintiff's claims were not groundless and unreasonable.  Although Judge Armstrong found no evidence that Plaintiff's advertising and promotion efforts were effective, she discussed the possibility that the efforts may have caused the mark to acquire secondary meaning and analyzed Plaintiff's evidence in support of its arguments.  Thus, the undersigned finds that Plaintiff's secondary meaning argument was neither groundless nor unreasonable.

    4.    <u>Whether Plaintiff's Raised Debatable Issues as to the Likelihood of Confusion</u>

Finally, Defendant argues that Plaintiff "made no sincere attempt to establish any of the essential elements" required to prove that Defendant's use of the identical mark caused a likelihood of confusion amongst consumers.  (Def.'s Mot. 16:14, Dkt. #61.)  In response, Plaintiff argues that it presented evidence that the parties provide related services in the same geographic area, to the same customers, through the same marketing channels, and that there were some incidents of confusion.  (Pl.'s Opp'n 22:8-11, Dkt. #72.)  Plaintiff contends that this evidence raised debatable issues as to whether there was a likelihood of confusion.  *Id.* at 22:7-8.

In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), the Ninth Circuit first laid out its eight-factor test to be used in determining whether there is a likelihood of confusion.  Those are:  (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of the plaintiff's mark; (5) the defendant's intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).  "Some factors are much more helpful than others, and the relative importance of each individual factor will be case specific.  It is often possible to reach a conclusion with respect to a likelihood of confusion after considering only a subset of the factors."  *Thane Intern., Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 901 (9th Cir. 2002) (internal

citations and quotations omitted). Defendant contends that Plaintiff was unable to show that a single *Sleekcraft* factor weighed in its favor and thus that Plaintiff's claims were groundless. (Def.'s Mot. 16:15, Dkt. #61.) In her order, Judge Armstrong analyzed each of the eight factors, finding that all but one favored Defendant. (Order 19:25, Dkt. #57.) Judge Armstrong thus found that no reasonable jury could find that there was a likelihood of confusion. *Id.* at 20:4-6.

However, this does not mean that Plaintiff's claims were groundless or unreasonable. In *Applied Information Sciences Corp.*, 511 F.3d 966, the plaintiff, a vendor of specialized software, alleged that the defendant, eBay, Inc., used one of its trademarks without its consent. *Id.* at 968-69. The district court granted the defendant's motion for summary judgment on the ground that the plaintiff did not have a valid protectable interest in the mark. *Id.* at 969. The defendant subsequently moved for attorney's fees under 15 U.S.C. § 1117(a), but the district court denied its motion, finding no compelling proof that the plaintiff acted capriciously or pursued litigation to harass the defendant, or that the plaintiff intended to bring a meritless or unreasonable case against the defendant. *Id.* at 972. The defendant appealed to the Ninth Circuit Court of Appeals where, despite finding that the plaintiff failed to produce any admissible evidence tending to show a likelihood of confusion, or address any of the Sleekcraft factors required for a likelihood of confusion analysis, the Ninth Circuit affirmed the district court's decision. *Id.*

Here, unlike the plaintiff in *Applied Information*, Plaintiff produced evidence in support of its likelihood of confusion claim. Regarding the relatedness of services factor, Plaintiff argued that its provision of real estate investment advice overlapped with Defendant's business in that they both provided real estate-related services. (Order 16:19-26, Dkt. #57.) Plaintiff also presented evidence that the parties used identical service marks. *Id.* at 17:8-9. As to the marketing channels used, Plaintiff's evidence showed that the parties both used banners and brochures as a form of advertising and both operated websites. *Id.* at 17:20-23. Regarding actual confusion, Plaintiff presented evidence that over the last decade, Defendant has received five or six phone calls and one package intended for Plaintiff. *Id.* at 18:25-26. While Judge Armstrong commented on the "paucity of evidence of actual confusion," *Id.* at 20:2, this lack of evidentiary support does not merit an award of

13

fees in light of *Applied Information*, where the plaintiff produced no evidence at all in support of its likelihood of confusion argument and the court found that attorney's fees were still not warranted. Further, although Judge Armstrong ultimately ruled against Plaintiff, she considered all the evidence it presented and never found that Plaintiff acted in bad faith or unreasonably in pursuing its claims. Thus, the undersigned finds that the present case is not exceptional and attorney's fees are not appropriate.

## IV.  CONCLUSION

Based on the foregoing, the undersigned finds that Plaintiff's lawsuit was not filed in bad faith and its claims were not groundless.  As such, this is not an exceptional case, and the undersigned RECOMMENDS that the Court DENY Defendant's Motion for Attorney's Fees. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation within 14 days of being served.

**IT IS SO RECOMMENDED.**

Dated: June 1, 2010                                          _____
                                                                              Maria-Elena James
                                                                              Chief United States Magistrate Judge

14